REQUESTED BY: Merlyn Carlson, Director, Nebraska Department of Agriculture Rex Amack, Director, Nebraska Game and Parks Commission
You have requested an opinion from the Attorney General to determine which state agency has regulatory authority for setting restrictions on the use of the M-44 Cyanide Capsule device, a pesticide delivery mechanism. You make this request with reference to two specific statutes, Neb. Rev. Stat. §§ 37-531 and 37-561 (Reissue 1998), and how the authority granted in those sections to regulate compare to the provisions found in the Nebraska Pesticide Act, Neb. Rev. Stat. §§ 2-2622
to 2-2655 (Cum. Supp. 2002).
As background information, you stated the U.S. Department of Agriculture Wildlife Service (`WLS') utilizes a spring loaded device in Nebraska called an "M-44 Cyanide Capsule" (`M-44') that delivers sodium cyanide to control certain predatory wild animals. You also indicated the sodium cyanide used in the M-44 is a pesticide registered with the Nebraska Department of Agriculture (`NDA'), that it carries a label approved by the U.S. Environmental Protection Agency (`EPA'), and it is a pesticide legally used under the authority of the NDA, so long as the labeling guidelines are adhered to by the user.
Primarily, you are concerned about a possible statutory conflict occurring because §§ 37-531 and 37-561 refer to a pesticide delivery device, similar in use to the M-44, that requires a more stringent use requirement than the use requirements required under both the Nebraska Pesticide Act and the EPA M-44 Use Restrictions, found in EPA Registration No. 56228-15. You suggest that these separate use requirements conflict because the regulations require different spacing distances of the devices from roads, and different requirements for the number of notice postings in the immediate area surrounding each individual device.
As it relates to your concern regarding the different pesticide use requirements, you are requesting a response to each of the following questions:
 1. Does the regulation of M-44 devices fall entirely under the EPA and NDA statutes and regulations, or do the provisions found in Neb. Rev. Stat. §§ 37-531 and 37-561 also apply to the M-44 devices;
 2. Do the provisions found in Neb. Rev. Stat. § 37-561 conflict with the provisions of the Nebraska Pesticide Act, and if there is a conflict should the section be modified or repealed as a result; and,
 3. While the NDA is identified as the lead agency for the regulation of pesticides in the Nebraska Pesticide Act (see Neb. Rev. Stat. § 2-2626), does the Nebraska Game and Parks Commission also have the authority to control M-44 devices that may be used to take wildlife, as it relates to the authority granted in sections 37-301, 37-314, 37-353
and 37-561 relating to devices which were the predecessors of the M-44 device?
In order to provide a response to all three questions, it is important first to determine if the M-44 Cyanide Capsule device comes under the definition of a trapping device, as defined in Neb. Rev. Stat. §§ 37-561 and 37-531. These are the specific sections you suggested may be in conflict with the Nebraska Pesticide Act, as it relates to the use of the M-44. Section 37-531 provides:
 Except as provided in section 37-561, it shall be unlawful to set or place any explosive trap or device, operated by the use of poison gas or by the explosion of gunpowder or other explosives, for the purpose of taking, stunning, or destroying wild animals. Any person who sets or places any such trap or device, except as is permitted in such section, shall be guilty of a Class III misdemeanor.
Neb. Rev. Stat. § 37-561 (Reissue 1998). (Emphasis added). As the section indicates, except for the provisions contained in § 37-561, it is unlawful to use an explosive trap or device for the purpose of killing or taking wild animals.
Section 37-561 provides for the use of such explosive devices to destroy predatory animals during the legal trapping season if certain precautions are met:
 (1) It shall be lawful to use any device which (a) is operated by the explosion of small amounts of gunpowder or other explosives, (b) is designed to discharge poison into the mouth of a wolf, coyote, fox, wildcat, or other predatory animals upon the grabbing or seizing of the bait attached to such device by such predatory animals, (c) does not discharge any ball, slug, shot, or other missile, and (d) does not endanger the life and limb of any human being or animal, other than a predatory animal, during the legal trapping season for fur-bearing animals. Such device may be used at any time by any agency of the commission or of the federal government or by persons having the written permission of the commission. Such lawful device when used shall be set not less than two hundred yards from any federal, state, or approved county highway and not less than one thousand yards from any school or from any inhabited dwelling without written permission of the resident of the dwelling. Such device shall not be used on another person's property without the written permission of the owner or operator. . . .
Neb. Rev. Stat. § 37-561. (Emphasis added).
Because the use of the word "and" is conjunctive in the definition of the device regulated by this section, in order for a device to apply it must be "operated by the explosion of small amounts of gunpowder or other explosives." See Baker's Supermarkets v. State, 248 Neb. 984, 993,540 N.W.2d 574, 581 (1995). (When construing a civil statute the word "and" when used properly is conjunctive in meaning unless a strict reading would lead to an absurd or unreasonable result to defeat the intent of the statute. Penal statutes must be strictly construed). Since § 37-531 provides for a Class III misdemeanor unless the provisions of § 37-561 are followed, § 37-561 should be strictly construed as a penal statute, and the word "and" should be considered conjunctive in its application.
It is important to recognize that the M-44 Cyanide Capsule device is a spring loaded device, meaning the sodium cyanide is delivered by the use of a coiled spring. According to the EPA's R.E.D. Facts on Sodium Cyanide, the M-44 is operated in the following manner:
 The sodium cyanide capsule is loaded into a capsule holder which is screwed onto the ejector mechanism of an M-44 device. The capsule holder is then treated with a scent formulated to attract canids. When an animal tugs at the capsule holder, a spring driver plunger ejects the sodium cyanide capsule into its mouth. Sodium cyanide causes death by inhibiting enzyme reactions in mammals that prevent oxygen flow to the blood.
EPA-738-F-94-016 (September, 1994).
As you indicated in your request, sodium cyanide devices in operation prior to the introduction of the M-44 device used explosives to operate its poison delivery mechanism. However, unlike its predecessors the M-44 was designed to use a spring loaded mechanism rather than an explosive discharge. Therefore, sections 37-531 and 37-561, within their respective definition of devices covered, neither restrict nor regulate the use of the M-44 devices because each section specifically only regulates and restricts the use of explosive discharge devices and not spring loaded devices such as the M-44.
Given our finding that an M-44 Cyanide Capsule device is not covered by either §§ 37-531 or 37-561, we will now address each specific question raised in your opinion request in light of this result.
1. Does the regulation of M-44 devices fall entirely under the EPA and NDA statutes and regulations, or do the provisions found in Neb. Rev. Stat. §§ 37-531 and 37-561 also apply to the M-44 devices?
For the reasons indicated above, the regulation of the M-44 Cyanide Capsule device, which utilizes a spring loaded delivery mechanism, is within the regulation authority of both the EPA as indicated in the M-44 Use Restrictions, EPA Registration No. 56228-15, and the NDA as granted in the Nebraska Pesticide Act, Neb. Rev. Stat. §§ 2-2622 to 2-2655.
The EPA provides use requirements for the M-44 included within its M-44 Use Restrictions, EPA Registration No. 56228-15. In part, these use requirements mandate that the "M-44 devices shall only be used on or within 7 miles of a ranch unit of allotment where losses due to predation by wild canids are occurring or where losses can be reasonably expected to occur based upon recurrent prior experience of predation on the ranch unit or allotment." The provision also requires, "the M-44 device shall be placed at least at a 50-foot distance or at such a greater distance from any public road or pathway as may be necessary to remove it from sight of persons and domestic animals using such public road or pathway." Id.
In addition, the Nebraska Pesticide Act provides for the regulation, use and restriction of pesticides within the State of Nebraska. The Act grants the NDA the authority, "to administer, implement and enforce the Pesticide Act and serve as the lead state agency for the regulation of pesticides." Neb. Rev. Stat. § 2-2626 (Cum. Supp. 2002). The NDA also has the authority to adopt regulations pursuant to the Act on the application and use of pesticides. Neb. Rev. Stat. §2-2626(f). "Such regulations may include methods to be used in the application of restricted-use pesticides, may relate to time, place, manner, methods, materials, amounts, and concentration in connection with the use of the pesticide, may restrict or prohibit use of the pesticides in designated areas during specified periods of time . . ." Id.
2. Do the provisions found in Neb. Rev. Stat. § 37-561 conflict with the provisions of the Nebraska Pesticide Act, and if there is a conflict should the section be modified or repealed as a result?
As your question relates to the use of the M-44 device, § 37-561
does not conflict with the NDA's ability to regulate the M-44 and the use of sodium cyanide in connection with the device, under the Nebraska Pesticide Act. The only modification that the Legislature may choose to consider is including within the definition of a device contained in both §§ 37-561 and 37-531, additional language so as to have the provision apply also to spring loaded mechanisms such as the M-44. This modification is necessary if the Legislature determines that such devices should be covered under the provisions found in §§ 37-561 and 37-531. However, if the sections are no longer appropriate given the possible phase out of explosive pesticide delivery devices, then repealing §§ 37-561 and37-531 may also be a consideration.
3. While the NDA is identified as the lead agency for the regulation of pesticides in the Nebraska Pesticide Act, does the Nebraska Game and Parks Commission also have the authority to control M-44 devices that may be used to take wildlife, as it relates to the authority granted in sections37-301, 37-314, 37-353 and 37-561 relating to devices which were the predecessors of the M-44 device?
The Nebraska Game and Parks Commission (`GPC') does have the authority to regulate M-44 devices, if such devices are used to hunt or fur-harvest game animals. Section 37-314(1) provides:
 The commission may, in accordance with the Game Law, other provisions of law, and lawful rules and regulations, fix, prescribe, and publish rules and regulations as to . . . bag limits or the methods or type, kind, and specifications of hunting, fur-harvesting . . . used in the taking of any game, game fish, nongame fish, game animals, fur-bearing animals, or game birds, as to the age, sex, species, or area of the state in which any game, game fish, nongame fish, game animals, fur-bearing animals, or game birds may be taken, or as to the taking of any particular kinds, species, or sizes of game, game fish, nongame fish, game animals, fur-bearing animals, and game birds in any designated waters or areas of this state . . .
Neb. Rev. Stat. § 37-314(1) (Cum. Supp. 2002). This section gives the GPC the authority to adopt rules and regulations with regard to the methods or type, kind, and specifications of hunting and fur-harvesting wild animals. But such rules and regulations must be in accordance with other provisions of law, such as the provisions found in the Nebraska Pesticide Act.
In order for § 37-314(1) to apply and enable the GPC to regulate M-44 devices, then for the purposes of the statute a wild canid would have to be considered a game or fur-bearing animal, and the act of using the M-44 device would have to be considered a type of hunting or fur-harvesting act upon a game or fur-bearing animal. To the extent that such regulation is written to specifically cover game or fur-bearing animals, during instances where the M-44 device is used specifically for hunting or fur-harvesting purposes, then the GPC could regulate the use of the M-44 device under the provisions found in § 37-314(1).
Sincerely,
 JON BRUNING Attorney General
 Jason W. Hayes Assistant Attorney General
Approved:
____________________________ Attorney General